UNITED STATES *v.* THE HEYMAN CO., INC. (No. 5035)[1]

---

[1] C.A.D. 755.

United States Court of Customs and Patent Appeals, Nov. 17, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Samuel D. Spector*, trial attorney, of counsel) for the United States.

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Eugene F. Blauvelt*, of counsel) for appellee.

Before Worley, Chief Judge, and Rich Martin, and Smith, Associate Judges, and Judge William H. Kirkpatrick.[2]

Worley, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, Appellate Term, affirming the judgment of the single judge sitting in reappraisement and sustaining the importer's contention that merchandise consisting of henequen fiber pads should be appraised at a statutory export value of $0.075 per pound net packed f.o.b. Mexico City.

The parties stipulated that

The merchandise at bar consists of pads of 100 percent henequin [sic] fiber about one-quarter inch in thickness, manufactured by Progress Padding Co., S.A., of Marida, Yucatan, Mexico, and that the pads weigh approximately three ounces per square foot. They were appraised on the basis of the statutory export value, as defined in section 402(d) of the Tariff Act of 1930, of similar pads of 100 percent henequin [sic] fiber, manufactured or produced by Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico.

There is no foreign or export value, as those terms are defined in section 402(c) or 402(d) of the Tariff Act of 1930, for "such" merchandise, manufactured or produced by Progress Padding Co., S.A., of Merida, Yucatan, Mexico.

If a foreign value, as defined by section 402(c), *supra*, exists for "similar" merchandise, manufactured or produced by Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico, then such foreign value is no higher than the appraised value.

Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico, manufactures or produces pads of 100 percent henequin [sic] fiber, which merchandise is similar to the instant imported merchandise.

The principal market of Mexico for the sale of pads of 100 percent henequin [sic] fiber for home consumption or for exportation to the United States is Merida, Yucatan, Mexico.

Fibras Duras de Mexico, S.A., of Mexico City, Mexico, manufactures or produces pads of 100 percent ixtle (istle) fiber and that such merchandise was freely offered for sale for home consumption and for exportation to the United

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

States at all times pertinent in the principal market of Mexico City, D.F., Mexico, for such ixtle (istle) fiber pads.

The usual wholesale quantity in the ordinary course of trade for the sale of 100 percent henequin [sic] pads in the principal market of Merida, Yucatan, Mexico, for exportation to the United States is a carload lot of from 20,000 to 24,000 pounds.

The usual wholesale quantity in the ordinary course of trade for the sale of 100 percent ixtle (istle) fiber in the principal market of Mexico City, D.F., Mexico, whether for domestic consumption or for exportation to the United States is a carload lot of from 20,000 to 24,000 pounds.

Since neither party contends that there is a foreign value, it is necessary to consider only export value.

The pertinent statutory provision is Section 402(d), Tariff Act of 1930.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is agreed in the stipulation that there is no export value for "such" merchandise as that at bar. It is the Government's contention that the admittedly similar merchandise referred to in the stipulation as having been produced by Santa Ines was freely offered for sale to all purchasers at the time the instant merchandise was exported, on or about May 23, 1955, at $0.10 per pound less non-dutiable charges from the place of shipment, which was the value found by the appraiser.

The Customs Court unanimously found that the similar merchandise produced by Santa Ines was not freely offered for sale to all purchasers within the meaning of section 402(d) at the time in question; and a majority also found the merchandise was not offered at a single price.

The evidence regarding the sales policy of Santa Ines consists of affidavits by the submanager of that company, one Montalvo, dated February 24, 1956, and July 30, 1956, respectively, and a report by one Joe M. Uberuaga, a United States Treasury Representative, of an interview with Montalvo in late July 1956.

In his February 24, 1956, affidavit, Montalvo said:

During the years *1954* and *1955*, my company sold its pads for export to the United States only to a limited number of purchasers. *We did not freely offer the pads to all purchasers for export to the United States because the policy of the Company is to limit its sales to only one dealer in any given area of the United States.* (Italics supplied.)

In his July 30, 1956, affidavit, Montalvo said:

We do not have any exclusive agents or distributors either in the home market or in the United States. * * * *at the present time we are only selling to two United States firms*, but we could sell to other firms if our prices were accepted. (Italics supplied.)

According to Uberuaga's report, Montalvo, at their July 1956 interview "emphatically stated that his firm does not restrict its sales to certain American importers. He advised that he is willing to sell to all purchasers, who would meet his prices. * * * He also informed me that the sale of merchandise is not restricted to any purchaser or class of purchasers."

The single judge found that Montalvo's statements were conflicting and that there was thus a failure of proof as to Santa Ines' sales policy. The Third Division, on the other hand, was of the opinion that the statements were reconcilable and that they established that Santa Ines did not freely offer the merchandise in question for sale to all purchasers during 1955. We agree with that conclusion.

In his affidavit of February 24, 1956, Montalvo clearly and un-equivocally stated that his company, during 1954 and 1955, did not freely offer the merchandise in question for sale to all purchasers, but to a limited number only. That statement is not contradicted by any statement in the later affidavit or interview. The later statements relate only to the policy of the company at the time when they were made, namely, July of 1956. That the company at that time "could sell to other firms if our prices were accepted" affords no valid evidence that similar policy was pursued in 1955. On the contrary, Montalvo stated that as of July 1956 sales were being made to only two United States firms, which would seem to confirm his earlier statement as to a limited sales policy during the preceding years.

In our opinion the evidence amply supports the holding of the Customs Court that Santa Ines was not, during 1955, freely offering merchandise similar to that at bar for sale to all purchasers within the meaning of Section 402(d). It is accordingly unnecessary to consider the further holding of the majority of the Customs Court that said merchandise was not offered at a single price.

The value of $0.075, found by the Customs Court, was based on offers for sale of allegedly similar merchandise by Fibras Duras of Mexico City. It is the Government's contention that the Fibras Duras merchandise was not similar to that at bar within the meaning of Section 402(d).

As stated in the stipulation, the instant pads are composed of 100 percent henequen fiber, while the Duras' pads contain 100 ixtle de palma (istle) fiber. The record shows that the methods of making

the pads are similar and that, as found by the Customs Court, the pads may be "used for the same purposes in the bedding and upholstery industries," but the Government urges that the differences in materials are such that the pads cannot properly be considered similar. Samples of the two materials are of record and, while they are not identical, there is, in our opinion, a sufficient resemblance to support the holding of the Customs Court that they are similar.

We do not think the price differential between henequen and istle pads sufficient to justify a holding that such pads are not similar. In our opinion the record supports the conclusion that the Customs Court did not err in finding the Duras' istle pads to be similar to the imported merchandise within the meaning of Section 402(d).

We are unable to agree with the Government that the fact that the principal markets for henequen and istle fiber merchandise are widely separated geographically has a material bearing on the issue of similarity. Section 402(d) appears to place no limitation on the location of principal markets so long as they are in the country of export.

The judgment is *affirmed*.